## Case No. 15,796.

UNITED STATES v. MONONGAHELA BRIDGE CO.

[26 Law Rep. 107; 11 Pittsb. Leg. J. 169; 2 Pittsb. Rep. 475.]

District Court, W. D. Pennsylvania. Dec., 1863.

PENAL ACTION—TOKENS TO BE USED IN LIEU OF MONEY—TOLL TICKETS.

1. Act Cong. July 17, 1862 [12 Stat. 592], construed.

2. Bridge, railroad and passenger railway companies may issue tickets "good for one trip," without violating the provisions of the act.

3. Those tickets are not designed to supplant the circulating medium, but are matters of convenience, equally to the passenger and the companies.

4. If they bore any resemblance or similitude to the coin of the United States, or the postage currency authorized by congress, or if the purpose, indicated upon their face, was to cause them to circulate as money, the corporations issuing them would be amenable to the penalties of the act.

This case, together with the cases of U. S. v. Alleghany Bridge Co. and U. S. v. Northern Liberties Bridge Co. was argued by Bakewell, Loomis & Shaler for defendants, and by Mr. Carnahan, U. S. Dist. Atty.

McCANDLESS, District Judge. The question raised by the demurrer is, whether these corporations are liable to the penalty under the provisions of the act of congress of July 17, 1862, for issuing paper tickets to be received for toll. The indictment charges that the defendants "did issue, circulate, and pay divers checks. memoranda, and obligations, each for a sum less than one dollar. intended to be received and used in lieu of the lawful money of the United States." The tickets are described as having printed on their face, "Monongahela Bridge—good for one trip," with the name of the collector of tolls added. We do not think that this is a violation of the act of congress. Unlike the tokens recently issued by the merchants of this city, and for which penalties have been imposed by this court, these tickets have no resemblance or similitude in shape, design or material, to the coin of the United States, nor to the postage currency, the free and untrammelled circulation of which it was the design of the act to advance and protect. They cannot even be dignified by the name, given in anything but polite phraseology, to the worthless issues of rotten boroughs, which in our past history flooded the country, and against a renewal of which the prohibitions of this act are directed. They do not contain a promise to pay money, they are not the representatives of money. and therefore cannot be said to circulate, or be intended to circulate

as money. Money is the medium of exchange among the people. Its peculiar characteristic is, that it is the one thing acceptable to all men, and in exchange for which they will give any commodity they possess. The power to make it is an exclusive attribute of sovereignty, no difference of what material it may be composed. It may be of the precious or the baser metals, or it may be of paper, provided it has the stamp of the sovereign authority. Any infringement of this supreme prerogative is visited with merited punishment by all nations that claim to have organized or well-regulated governments.

What are these tickets, but a mere permit to pass on the defendant's bridge, the printed evidence that the holder has the right of way over a public thoroughfare for a given distance? Their exclusion would (prohibition would) be subject to the penalties of this law all railroad and passenger railway companies which issued tickets, as well for the convenience of the public as for their own protection. No passenger is bound to receive them, nor should they be tendered, except during periods when there is great scarcity of the smaller coin of the United States, and when the exchange is a mutual accommodation to the passenger and the collector; as every passenger is bound to pay his toll, and in the lawful circulating medium the embarrassment is more frequently with him than with the company. But as the latter enjoy a monopoly of the particular highway, it is their duty so to use their franchise as not to put the public to unnecessary inconvenience. The grant of corporate privileges is for the public good; and from our knowledge of the gentlemen having the management of these companies, we are satisfied they entertain no desire to abuse them. They have an interest in common with the community in preserving the purity of the currency, and a departure from this policy would only react on themselves.

Let judgment be entered for the defendants on the demurrer, the costs to be paid by the United States.